NO. 16-4238

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

WILLIAM S. DAHL,
Appellant

APPEAL FROM AMENDED JUDGMENT OF SENTENCE
IN CRIMINAL NO. 14-0382 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

LOUIS D. LAPPEN
Acting United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

MICHELLE ROTELLA
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8326

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................1

    I.    Subject Matter Jurisdiction .......................................................1

    II.    Appellate Jurisdiction ................................................................1

STATEMENT OF ISSUES ............................................................................ 2

STATEMENT OF THE CASE ...................................................................... 3

    I.    Procedural History ..................................................................... 3

    II.    Statement of Facts ..................................................................... 5

        A.    The Offense Conduct ...................................................... 5

        B.    The Original Sentencing.................................................. 7

        C.    The Resentencing. ........................................................... 8

STATEMENT OF RELATED CASES...........................................................13

SUMMARY OF ARGUMENT .....................................................................14

ARGUMENT.................................................................................................15

    I.    THE IMPOSITION OF THE 293-MONTH
        SENTENCE DID NOT VIOLATE DUE
        PROCESS, AS THE DISTRICT COURT
        CAREFULLY CONSIDERED THE
        SENTENCING FACTORS AND IMPOSED
        AN APPROPRIATE SENTENCE ...............................................15

II.    THE DISTRICT COURT MEANINGFULLY
       CONSIDERED THE 121 TO 151 MONTH
       GUIDELINE RANGE AND FOUND
       IT TO BE INADEQUATE FOR THIS
       OFFENDER ............................................................................ 29

       A.    The Court Did Not Commit Procedural
             Error in Not Repeating the Guideline
             Range When It Explained Its Sentence ........................... 32

       B.    The District Court Did Not Commit Plain
             Error in its Sentencing Explanation ................................ 34

CONCLUSION ............................................................................ 44

# TABLE OF AUTHORITIES

## Cases

Gall v. United States,
    552 U.S. 38 (2007) ............................................................25, 27, 33, 34

Holland v. New Jersey Department of Corrections,
    246 F.3d 267 (3d Cir. 2001) ..............................................................15

Johnson v. United States,
    520 U.S. 461 (1997) ..........................................................................29

Kimbrough v. United States,
    552 U.S. 85 (2007) ............................................................................25

Marks v. United States,
    430 U.S. 188 (1977) ..........................................................................16

Puckett v. United States,
    556 U.S. 129 (2009) ..........................................................................31

Spears v. United States,
    555 U.S. 261 (2009) ..........................................................................17

Taylor v. United States,
    495 U.S. 575 (1990) ..........................................................................23

United States v. Arrelucea–Zamudio,
    581 F.3d 142 (3d Cir. 2009) ..............................................................40

United States v. Atkinson,
    297 U.S. 157 (1936) ..........................................................................29

United States v. Ausburn,
    502 F.3d 313 (3d Cir. 2007) ..........................................................15-17

United States v. Begin,
    696 F.3d 405 (3d Cir. 2012) ................................................. 31, 36, 41

United States v. Booker,
    543 U.S. 220 (2005) ...............................................17, 22, 30, 33-35, 37

United States v. Bungar,
    478 F.3d 540 (3d Cir. 2007) ........................................................... 42

United States v. Charles,
    467 F.3d 828 (3d Cir. 2006) ........................................................... 35

United States v. Cooper,
    437 F.3d 324 (3d Cir. 2006) ...................................................... 35, 36

United States v. Dahl,
    833 F.3d 345 (3d Cir. 2016) ..................................................5, 10, 13, 19

United States v. Dragon,
    471 F.3d 501 (3d Cir. 2006) ........................................................... 42

United States v. Flores-Mejia,
    759 F.3d 253 (3d Cir. 2014) ......................................................29, 31

United States v. Frady,
    456 U.S. 152 (1982) ...................................................................... 30

United States v. Grier,
    475 F.3d 556 (3d Cir. 2007) ........................................................... 36

United States v. Gunter,
    462 F.3d 237 (3d Cir. 2006) ...................................................... 30, 31

United States v. Irizarry,
    458 F.3d 1208 (11th Cir. 2006) .......................................................17

United States v. King,
    454 F.3d 187 (3d Cir. 2006) ........................................................... 35

United States v. Lofink,
    564 F.3d 232 (3d Cir. 2009) ........................................................... 35

United States v. Merced,
    603 F.3d 203 (3d Cir. 2010) ..........................................................31, 36

United States v. Nappi,
    243 F.3d 758 (3d Cir. 2001) ...............................................................16

United States v. Olano,
    507 U.S. 725 (1993) ........................................................................ 29

United States v. Parker,
    462 F.3d 273 (3d Cir. 2006) .............................................................. 40

United States v. Pennavaria,
    445 F.3d 720 (3d Cir. 2006) ...............................................................16

United States v. Quiles,
    618 F.3d 383 (3d Cir. 2010) .............................................................. 36

United States v. Rita,
    551 U.S. 338 (2007) ................................................................... 35, 36

United States v. Rosales-Bruno,
    789 F.3d 1249 (11th Cir. 2015) ................................................26-28, 37

United States v. Schlager,
    573 F. App'x 106 (3d Cir. 2014) .........................................................41

United States v. Tomko,
    562 F.3d (3d Cir. 2009) ................................................................... 42

United States v. Vampire Nation,
    451 F.3d 189 (3d Cir. 2006) ...............................................................17

United States v. Vargas,
    477 F.3d 94 (3d Cir. 2007) ............................................................... 40

United States v. Young,
    470 U.S. 1 (1985) .......................................................................... 30

## Statutes and Rules

18 U.S.C. § 924(e) ................................................................................ 23

18 U.S.C. § 1470 .................................................................................... 3

18 U.S.C. § 2260A .................................................................................. 3

18 U.S.C. § 2422 .................................................................................... 3

18 U.S.C. § 3231 .................................................................................... 1

18 U.S.C. § 3553 ............................................................................ passim

18 U.S.C. § 3742 .................................................................................... 1

28 U.S.C. § 1291 .................................................................................... 1

Fed. R. Crim. P. 32 .............................................................................. 16

U.S.S.G. § 2G1.3 .................................................................................... 7

U.S.S.G. § 4B1.5 ............................................................................ passim

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

The defendant was convicted of federal criminal offenses, in a matter over which the district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231.

## II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the order of amended judgment in a criminal case entered on December 1, 2016, this Court has jurisdiction over this matter under 28 U.S.C. § 1291. In addition, this Court has jurisdiction pursuant to 18 U.S.C. § 3742 to review the sentence imposed on the defendant.

## STATEMENT OF ISSUES

1. Did the district court's imposition of the same sentence on remand after careful consideration of the 18 U.S.C. § 3553 sentencing factors comport with due process?

2. Did the district court commit plain error by failing to "meaningfully consider" the revised guideline range when it imposed an upward variance for this nine-time convicted sex offender?

3. Did the district court commit plain error by rejecting the defendant's mitigation arguments, finding that a sentence outside of the advisory guideline range was warranted?

# STATEMENT OF THE CASE

## I. Procedural History

On November 24, 2014, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging William S. Dahl with three counts of attempted use of an interstate communication facility to entice a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422(b); one count of enticement of a minor to travel in interstate commerce to engage in sexual activity, in violation of 18 U.S.C. § 2422(a); one count of attempted transfer of obscene material to minors, in violation of 18 U.S.C. § 1470; and one count of commission of a felony offense involving a minor while registered as a sex offender, in violation of 18 U.S.C. § 2260A.

The registration count under Section 2260A was subsequently dismissed by the district court upon motion by Dahl. Thereafter, Dahl entered an open plea of guilty to the remaining charges in the indictment. The presentence report outlined Dahl's nine prior convictions for various felony and misdemeanor offenses, including a 1991 conviction in Delaware for first-degree unlawful sexual contact and third-degree unlawful sexual contact, PSR ¶ 47, and a 2001 Delaware conviction for second-degree unlawful sexual contact, PSR ¶ 51. According to the presentence report, on

two occasions in April 1989, Dahl engaged in oral sex with 17-year-old boys, PSR ¶ 47, and in 1999, Dahl on three occasions touched the genitals of a 14-year-old boy who slept at his house. PSR ¶ 51.

Based on his prior convictions, the probation office classified Dahl as a repeat and dangerous sex offender against minors pursuant to U.S.S.G. § 4B1.5, which elevated his offense level to 37, and increased his criminal history category from IV to V. PSR ¶ 55. With a three-level reduction for acceptance of responsibility, Dahl's total offense level was 34, and his guideline range was established at 235 to 293 months.

At the original sentencing hearing on May 19, 2015, the district court accepted the guideline calculations in the presentence report, including the classification of Dahl as a repeat and dangerous sex offender. The district court sentenced Dahl to 293 months' imprisonment and 20 years of supervised release. On appeal, Dahl challenged the application of U.S.S.G. § 4B1.5 as plain error because his prior state sex convictions were not categorically "sex offense convictions" under the Guidelines. This Court agreed. In an opinion issued on August 18, 2016, this Court remanded for resentencing, holding that the Delaware state statutes under which Dahl had previously been convicted were broader than the equivalent federal statute, and as a result, his prior state convictions did not qualify as

predicate sexual offenses for purposes of U.S.S.G. § 4B1.5. *United States v. Dahl*, 833 F.3d 345 (3d Cir. 2016).

On November 30, 2016, Dahl appeared before the district court for resentencing. Without the Section 4B1.5 classification as a sexual recidivist, Dahl's offense level was 29 and his criminal history category was IV. Therefore, his Guideline range was determined to be 121 to 151 months' incarceration. The district court granted the government's motion for an upward variance, and sentenced Dahl to a total term of 293 months' incarceration, followed by 20 years' supervised release. Dahl filed a timely notice of appeal.

## II. Statement of Facts

### A.    The Offense Conduct.

In October 2013, an undercover detective from the Delaware County District Attorney's Office was conducting an investigation into sex offenders' use of online advertisements on Craigslist.org to contact and meet minors for sex. The detective answered a Craigslist advertisement entitled "Where is all the young cock? – m4m (naamans)." The body of the advertisement read: "Hosting late night. Looking for young white cock. I love cum and pee. On naamans rd. younger is better. Small cock is cool.

White guys only please." The poster of the advertisement was later identified as defendant William Dahl.

Responding to the advertisement, the undercover detective told Dahl that he was 15 years old. Dahl and the detective continued to communicate via e-mail that same day, with Dahl attempting to convince the putative 15-year-old to ride his bicycle to Delaware so they could meet. In e-mail communications over the next few weeks, Dahl repeatedly brought up the topic of sex, engaging in very graphic sexual talk about what acts they would engage in when they met. They continued to text and e-mail about when and where to meet, with Dahl asking the undercover to come to his house in Delaware. They eventually agreed to meet on November 21, 2013. On this date, Dahl and the detective continued to text and discuss when and where to meet, with Dahl continuing to ask the "boy" to come to Dahl's house. Dahl was arrested after the detective called off the meeting.

At the same time that he was communicating with the first alleged 15-year-old, Dahl also corresponded with a second undercover officer who also posed as a 15-year-old boy. This officer responded to two additional ads placed by Dahl on Craigslist that were similar to the ad to which the first undercover officer responded. In the ensuing communications with the second undercover officer, Dahl again discussed sex and engaging in sex

acts in graphic language, and requested the putative boy to travel to his house. App. 110-12, 139-42; PSR ¶¶ 4-12.

### B.    The Original Sentencing.

At the first sentencing hearing, the district court found that Dahl's adjusted offense level under U.S.S.G. § 2G1.3 was 32, prior to the three-level reduction for acceptance of responsibility. App. 102. Dahl had nine prior convictions for various felony and misdemeanor offenses, including a 1991 conviction in Delaware for first-degree unlawful sexual contact and third-degree unlawful sexual contact, PSR ¶ 47, and a 2001 Delaware conviction for second-degree unlawful sexual contact. PSR ¶ 51. The presentence report outlined the facts underlying each of his convictions, including the multiple convictions for his sexual abuse of minor boys:

> (1) In 1989, Dahl performed oral sex on a 17-year-old boy who had asked Dahl to be his sponsor in a drug and alcohol rehabilitation program. Dahl forcibly held the boy down, after the boy unsuccessfully tried to push him away. PSR ¶ 47.

> (2) Also in 1989, Dahl engaged in oral sex with another 17-year-old boy that he befriended and sponsored in connection with Narcotics Anonymous. Dahl invited the boy to spend the night, forced the boy against the wall, and although the boy told him to stop, overpowered the boy. PSR ¶ 47.

> (3) In 1999, Dahl on three occasions touched the genitals of a 14-year-old boy, who was Dahl's martial arts student. The boy stayed overnight at Dahl's residence and was molested multiple times while he slept. PSR ¶ 51.

Based on these convictions, in the presentence report, the probation officer found that Dahl was a "repeat and dangerous sex offender" under U.S.S.G. § 4B1.5. This classification elevated Dahl's offense level to 37, or 34 after the reduction for acceptance of responsibility, and increased his criminal history category from category IV to V. PSR ¶ 55. This resulted in a guideline range of 235 to 293 months' imprisonment. App. 102. At the sentencing hearing, the district court agreed with the sexual recidivist classification. App. 102. Noting Dahl's lengthy and serious criminal history and the seriousness of the offenses of conviction, the district court sentenced Dahl to 293 months' imprisonment followed by 20 years' supervised release. App. 102-04.

## C.    The Resentencing.

Following remand from this Court, the district court resentenced Dahl on November 30, 2016. Without the 4B1.5 recidivist sexual offender enhancement, Dahl's total offense level was again calculated at 29. He had nine criminal history points, placing him at the very top of criminal history category IV. The resulting guideline range was 121 to 151 months'

incarceration. Dahl did not contest his nine prior convictions, the facts underlying those convictions, or the calculation of his guideline range.

Before sentencing, the government moved for an upward departure and an upward variance, based on the fact that the guideline range underrepresented Dahl's lengthy criminal history,[1] failed to account for Dahl's undeterred sexual crimes against children, and was wholly inadequate for the crimes committed by Dahl. App. 143-49. At the resentencing hearing, the government argued that the court should again impose a sentence of 293 months' imprisonment, based on Dahl's criminal record that spanned three decades and involved nine convictions, five of which were sexual crimes against minor children. App. 109-20. The government emphasized that at 54 years of age, Dahl had done nothing with his life except commit crimes, most of which victimized young boys.[2] The government argued that his decades of failed treatment efforts, continued violations of his supervision and court-ordered treatment and

---

[1] Dahl's extensive criminal history dated back over three decades. Because of the age of some of his convictions, not all of his convictions factored into the calculation of his criminal history.

[2] Two victims who had been sexually abused by Dahl in the 1990s were present in court at the resentencing hearing. Though they were not permitted to address the court, their presence almost 20 years after they were abused by Dahl demonstrated the lifelong impact of Dahl's sexual crimes. App. 114-15.

directives, and his virtually uninterrupted commission of sexual crimes against children warranted that the sentence of 293 months' incarceration again be imposed. *Id.*

Dahl argued for a sentence within the 121 to 151 month range. As part of his sentencing memorandum, Dahl filed an exhibit that showed a comparison of sentences imposed for all crimes in the Third Circuit, but presented no evidence or argument regarding disparities between defendants convicted of child sex offenses. App. 168-69. At the resentencing hearing, Dahl argued that his risk of recidivism was reduced because of his age, but presented no evidence to support his argument. App. 127. Additionally, Dahl advised the court that he was again in sex offender treatment while in prison. App. 121-22, 164. Lastly, Dahl argued that he presented a reduced risk of reoffending because he was in "failing health." In support of this claim, he presented doctors' notes from the Delaware Department of Corrections showing that he had osteoarthritis of his hip, for which he was being treated with OxyContin.[3] App. 122, 164, 172-219.

---

[3] Dahl's characterization of his health as "failing" is misleading, as the prison records demonstrate that the only condition he suffers from is arthritis in his hip. On appeal, Dahl continues to argue that "his health had precipitously declined in eighteen months since the first sentencing," despite the fact that his only health concern was his arthritic hip for which

After considering the evidence and arguments presented by the parties, the district court elected to impose an above-Guideline range sentence of 293 months' incarceration. The court provided a comprehensive explanation for its imposition of the sentence. App. 132-35. The court emphasized that Dahl's crimes were the most serious in the criminal code, as they "involved, in one form or another, the attempt to prey upon a young boy and/or boys, and the abuse of them sexually." App. 134. The court then turned to Dahl's "most serious" criminal history, which the court noted spanned over three decades and included nine prior convictions, five of which were for sexual abuse and contact with minors. App. 134. Of great concern to the court was the fact that Dahl had been given every type of sentence and intervention, including therapy, treatment, home confinement, probation, and prison, but nothing deterred him from continuing to commit sexual crimes against children. App. 134-35.

In support of a significant upward variance, the court specifically noted the need to protect the public from Dahl, summarizing:

> In a word, Mr. Dahl, you are a pedophile and a recidivist. The Court, above all, is compelled to act to protect society and particularly young boys from further crimes of you, the defendant. The Court has no

---

he was prescribed exercises and anti-inflammatory and pain medications, with the possibility of a hip replacement at some point in the future. Br. 10; App. 172-94. Dahl did not attempt to show how, if at all, an arthritic hip would prevent him from using a computer to solicit children for sex.

doubt that without a long sentence and a significant upward variance, you would be back on the street as a sexual predator. The Court cannot afford to take a chance on your behaving yourself back in society.

App. 134-35.

In concluding, the court again noted that a substantial upward variance was warranted for this offender, stating, "I find nothing in your history or your circumstances which seems to have any redeeming value whatsoever or any reason not to impose a significant upward variance." App. 135. The court then imposed a sentence of 293 months' incarceration, to be followed by 20 years' supervised release. App. 135.

Dahl did not object to the procedure employed by the district court, nor did he object to the 293-month sentence that was imposed. App. 136.

## STATEMENT OF RELATED CASES

In *United States v. Dahl*, 833 F.3d 345 (3d Cir. 2016), this Court found that the state statutes underlying Dahl's prior convictions for the sexual abuse of minors were broader than the equivalent federal statute, and as a result, did not qualify as predicate sexual offenses for purposes of establishing him as a repeat and dangerous sex offender pursuant to U.S.S.G. § 4B1.5. This Court then vacated the original judgment and remanded the case for resentencing.

The government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

The district court comported with procedural due process by correcting the error involving the Section 4B1.5 enhancement to the Guidelines, calculating a guideline range free of that error, and considering the corrected range, along with all of the other sentencing factors enunciated in 18 U.S.C. § 3553(a).

The district court did not commit plain error in concluding that the revised guideline range of 121 to 151 months was inadequate. It meaningfully considered the guideline range and appropriately determined that the defendant's case warranted a significant upward variance.

The district court did not commit plain error in imposing a significant variance, or in its remarks in response to mitigation arguments by the defense. Its recitation of reasons for imposing sentence demonstrates the court's careful and proper consideration of all of the sentencing factors.

# ARGUMENT

## I. THE IMPOSITION OF THE 293-MONTH SENTENCE DID NOT VIOLATE DUE PROCESS, AS THE DISTRICT COURT CAREFULLY CONSIDERED THE SENTENCING FACTORS AND IMPOSED AN APPROPRIATE SENTENCE

### Standard of Review

This Court exercises plenary review over the appellant's claim that the sentencing proceeding failed to comport with due process standards. *United States v. Ausburn*, 502 F.3d 313, 321 (3d Cir. 2007); *Holland v. New Jersey Department of Corrections*, 246 F.3d 267, 278 (3d Cir. 2001).

### Discussion

Defendant/appellant William S. Dahl asserts that the district court violated due process because the court imposed the same sentence on remand as it imposed at the original sentencing. He argues that by again imposing a sentence of 293 months' incarceration, the district court perpetuated the guideline error that was corrected on appeal. The defendant is wrong; the record demonstrates that the district court imposed the 293-month sentence after much deliberation and consideration of all of the Section 3553(a) sentencing factors, and selected this specific term for this repeat, undeterred, serial child sex offender.

In general, procedural due process requires "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Ausburn*, 502 F.3d at 32. Due process in a criminal sentencing requires that a defendant receive notice of, and a reasonable opportunity to comment on, the factual background for his sentence and the potential punishments that may be imposed. *Id., citing United States v. Nappi*, 243 F.3d 758, 763-64 (3d Cir. 2001); *Marks v. United States*, 430 U.S. 188, 191-92 (1977) ("[A] right to fair warning of that conduct which will give rise to criminal penalties is fundamental to our concept of constitutional liberty").

Federal Rule of Criminal Procedure 32 contains specific requirements to ensure that the defendant is made aware of the evidence to be considered and potentially used against him at sentencing and that he is provided an opportunity to comment on its accuracy. *Nappi*, 243 F.3d at 763. In addition, the statutes cited in the indictment and the information provided in the presentence report provide the defendant with notice of the maximum potential punishment for the charged offenses. *See United States v. Pennavaria*, 445 F.3d 720, 723-24 (3d Cir. 2006) (United States Code provided "fair warning" that a prison term up to the statutory maximum for that crime could be imposed).

- 16 -

There is no requirement in this Circuit that the district court give prior notice of its intent to deviate from the applicable guideline range. *Ausburn*, 502 F.3d at 325-26; *United States v. Vampire Nation*, 451 F.3d 189 (3d Cir. 2006). Indeed, defendants are on notice that the sentencing guideline range is advisory, and that the sentencing court must only consider the 3553(a) factors and impose a reasonable sentence at or below the statutory maximum. *See United States v. Irizarry*, 458 F.3d 1208, 1212 (11th Cir. 2006) (per curiam); *Vampire Nation*, 451 F.3d at 196 (following *Booker*, defendant may no longer assume that the range of potential punishment is effectively bound by the guideline range).

The Supreme Court reaffirmed that a sentencing court has authority to disagree with the recommendation of the Sentencing Guidelines based on an "individualized determination" that the Guidelines suggest an incorrect sentence in a particular case. *Spears v. United States*, 555 U.S. 261, 264 (2009). Thus, a district court may impose a greater or lesser sentence than that suggested by the Guidelines, even if the court's reasoning depends on its assessment of exactly the same factors taken into account in the Guidelines determination.

In this case, Dahl argues that the 293-month term on resentencing was derived solely from the original guideline range that was found to be

erroneous, and that the district court would never have imposed that term if the original guidelines had been correctly calculated. His argument implicitly assumes that the district court was required to impose a lower sentence at resentencing because the Guidelines range, which is only one of the sentencing factors under Section 3553, had been lowered. He is incorrect.

When the court imposed the original sentence, it was not bound by the advisory guideline range of 235 to 293 months. The court considered the guideline range, and determined that the appropriate and reasonable sentence was 293 months. The court could have imposed a sentence outside of the range had the court believed that such a sentence was warranted. At the first sentencing, the court considered all of the 3553(a) factors and reviewed them for the record, noting that the driving factor for the sentence it was about to impose was the protection of the public:

> I think though that the most important of the factors under Title 18 United States Code, Section 3553(a) which I must focus on is to protect the public from further crimes of you, the defendant. Despite the fact that you've been, in fact, a ward of the Delaware Courts for over 25 years, you seem to be getting yourself involved in a series of events involving minors and particularly sexual encounters involving minors. You've obviously learned nothing from your encounters with the judicial system and the prison system, and I must be very concerned about protecting minors in Delaware and elsewhere from the predatory conduct in which you have engaged over these many, many years.

App. 103-04.

On appeal, this Court remanded, finding that the record was unclear as to whether the erroneous Guideline range played any role in the ultimate sentence that the district court imposed. In its opinion, this Court was clear that the decision to remand did not prohibit reimposition of the 293-month sentence:

> Here, the sentencing judge referenced the initial guideline range, stating "I find no basis to vary downward from the advisory sentencing guidelines." Therefore, we cannot conclude, as would be required to affirm, "that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." Nor can we conclude "that the sentencing court would have imposed the same sentence regardless of the [sex] offender designation" because "[t]o assume so – particularly when the record suggests that [the offender designation] played a role in the ultimate sentence imposed – would 'place us in the zone of speculation and conjecture.'" But we also cannot conclude that, had the judge known § 4B1.5 did not apply, he would not have nevertheless considered an upward departure---an integral feature of the Sentencing Guidelines.

*Dahl*, 833 F.3d at 358-59 (citations omitted).

At the resentencing hearing, Dahl's counsel conceded that this Court had not precluded the district court from imposing a term above the guideline range on resentencing:

> DEFENSE COUNSEL: So, I'd ask Your Honor to consider this, especially the argument outlined in my sentencing memo, that coming back to the same number [293 months] is just side-stepping that long history of jurisprudence about the categorical approach. Saying this Guideline doesn't apply, so let's apply that Guideline, but applying the facts of the underlying case to get back up here is just

circumventing the Third Circuit's reasoning. And again, as I placed in my memo, they did choose to remand it, and they chose to remand it for a reason.

THE COURT: But they did say that I could depart upward. I mean, vary upward, vary upward.

DEFENSE COUNSEL: Your Honor, yes. They didn't - and *they did not say that your hands are tied by their decision as far as what sentence you ultimately impose* and that's why things get remanded for resentencing and then the Appeals Court never determined what a sentence should have been.

App. 128-29 (emphasis added).

Accordingly, on remand, the district court made clear its intent to again impose a severe sentence, and articulated its reasons for the record so as to avoid speculation and conjecture on review. The district court several times discussed the fact that a significant upward variance was warranted. In so doing, the court stated that it relied upon Dahl's personal criminal record, Dahl's demonstrated danger to children, and the evidence that, previously, all conditions short of incarceration had failed to prevent or deter Dahl from continuing to victimize children. The court stated that, again, it considered the primary factor in sentencing Dahl to be the need to protect the public:

Now I need to turn to the important issue of the need to protect the public from further crimes of you, the defendant. You have a most serious criminal history, which has spanned over three decades. You have nine criminal convictions, included of course are convictions for

robbery. But more pertinent to today's sentencing, you have five convictions for sexual contact and abuse of minors.

As revealed in the presentence report, you have been given therapy and treatment, you have been placed on home confinement, you have been placed on probation and none of these have seemed to do any good. You have also been sent to prison for your crimes, but apparently has not taught you anything at all. In a word, Mr. Dahl, you are a pedophile and a recidivist. The court, above all, is compelled to act to protect society and particularly young boys from further crimes of you, the defendant. The Court has no doubt that without a long sentence and significant upward variance, you would be back on the street as a sexual predator. The Court cannot afford to take a chance on your behaving yourself back in society.

App. 134-35.

When Dahl appeared for resentencing, the advisory guideline range had been reduced, but the same defendant stood before the district court. He faced sentencing for the same abhorrent sexual crimes against two minor children, and his horrific criminal record remained the same. None of the circumstances of any of his past or present crimes was challenged. He was still a repeat child sex offender who had amassed nine prior convictions and who had been under continuous court supervision for the last 30 years as a result of his constant violations and his undeterred commission of new sexual crimes against children. The district court's intent was clear on resentencing: it intended to lock Dahl away until he was much too old to commit any other crimes. The imposition of the 293-month term of

incarceration was more than justified by the ample record of Dahl's persistent criminality. There was no due process violation.

Further, to the extent that the original sentence of 293 months was derived from the higher range, nothing prevents the court from considering that term again. Dahl's complaint that the reimposed 293-month sentence repeats the earlier guideline error is unfounded, because there is no reason that the district court could not again look to that range.[4] To be sure, the district court was now required to consider the range of 121-151 months as representing the Guidelines' recommendation, and it did so. App. 133 (court states at resentencing, "[u]nder the Advisory Sentencing Guidelines, [Dahl] could be sentenced between 121 and 151 months in prison"). But then, under *Booker,* there was no limit on the information that the court could consider in determining the appropriate sentence, inside or outside the guideline range, and certainly in this case the alternative range is an appropriate consideration.

---

[4] Dahl even goes so far as to suggest that "the district court should be instructed on remand to impose a reduced sentence (whether within or above the Guidelines range) that reflects an assessment of the § 3553(a) factors divorced from the erroneous 235-293 month range." Br. 20 n.9. He presents no support for such an assertion, which is entirely at odds with the court's sentencing discretion.

In looking at the Guidelines, it is apparent that the Sentencing Commission, quite sensibly, believes the higher range should apply to a predator like the defendant. Section 4B1.5 calls for an enhanced range for defendants who repeatedly commit sex offenses against minors, proposing, in this case, a sentence within the range of 235 to 293 months. The only reason that is not the final range is because of the application of the categorical approach, which focuses only on the drafting of the state statutes under which he was convicted, not his actual conduct. In these circumstances, the court could certainly consider the alternative recommendation in assessing the basket of relevant factors.

This case well illustrates the oddity of the "categorical approach" as applied to recidivism provisions, and the miscarriages of justice it may produce. The Supreme Court first applied the categorical approach in *Taylor v. United States,* 495 U.S. 575 (1990), as a matter of statutory interpretation of the Armed Career Criminal Act, 18 U.S.C. § 924(e), and courts soon extended it to comparable Sentencing Guidelines provisions as well. In this case, the result is particularly troublesome, indeed unjust: the defendant, who indisputably committed physical sex offenses against minors on two prior occasions, is held not subject to the explicitly pertinent guideline provision only because of the vagaries of drafting of a Delaware

statute. This Court did not find that Section 4B1.5 was inapplicable because Dahl did not commit previous sex offenses described in that guideline; it reached its conclusion, under the categorical approach, because the Delaware statute might apply overbroadly to other offenses that Dahl *did not* commit and that do not qualify under the guideline.

Further, without question, Dahl would be subject to the same guideline provision if he earlier were held liable based on a statute more closely drawn to his actual conduct. Indeed, a defendant presenting exactly the same record of conduct as Dahl would be sentenced under Section 4B1.5 if he had been prosecuted in many other states. Making a sentencing distinction on such a fact is quite troubling, given that it is divorced from the defendant's actual conduct.

Thus, in this situation, a sentencing judge may readily find, it is the strict application of the categorical approach that results in a substantively unreasonable (if not entirely inexplicable) sentence, not consideration of a guideline range that obviously was meant to apply to a person with exactly the record of criminal conduct presented by Dahl. It is apparent why, even after considering the corrected guideline range, the court still permissibly thought the 293-month term was appropriate, and it committed no error in doing so.

The Supreme Court has consistently instructed that a sentencing court must consider the particular circumstances of a defendant's case. *See Gall*, 552 U.S. at 54 ("the unique facts" of the defendant's situation provided support for the district court's determination that a below guidelines sentence was appropriate); *Kimbrough v. United States*, 552 U.S. 85, 111 (2007) (holding that the district court did not abuse its discretion by imposing a below guidelines sentence where it "properly homed in on the particular circumstances of [the defendant's] case"). In this case, the district court was extremely familiar with all of the particular facts and circumstances of Dahl's crimes, criminal history, and personal circumstances, having (1) heard and ruled on Dahl's pretrial motions; (2) rejected Dahl's attempt to negotiate a plea to a specific term of months; (3) reviewed the lengthy presentence report, which outlined in full detail the facts underlying Dahl's prior crimes and the psychiatric evaluations classifying him as a pedophile; (4) presided over the original sentencing hearing, during which evidence was admitted, testimony from government and defense witnesses presented, and lengthy arguments made; (5) considered Dahl's allocution at his first sentencing hearing; (6) reviewed new sentencing memoranda in preparation for the resentencing submitted by the parties; (7) presided over the second sentencing hearing, during

which lengthy arguments were again made; and (8) considered Dahl's second allocution.

The district court was thus furnished with extensive information about the circumstances of Dahl's present crimes, his mental status and classification as a pedophile, the background of his prior sexual assaults and exploitation of young boys, his abysmal failure under court supervision over the last three decades, and his extensive criminal record that dated back 30 years. What emerged was a very clear and accurate picture of William Dahl:  an undeterred, serial child sexual offender who could not be controlled through any measures short of incarceration. The court's primary factor in imposing sentence was the protection of the public from further sexual abuse of young boys by Dahl, App. 134-35, a factor that is fully supported by this record. The district court's finding that this factor (and the other factors supporting a long term of incarceration) weighed more heavily than the new advisory guideline range in the particular circumstances of Dahl's case was a proper exercise of the court's discretion and was amply supported by the record.

Dahl cites to the dissent in *United States v. Rosales-Bruno*, 789 F.3d 1249 (11th Cir. 2015), a case with similar sentencing issues that was decided in the government's favor. Br. 23. The Eleventh Circuit remanded *Rosales-*

*Bruno* for resentencing after the district court erred in finding that one of the defendant's convictions qualified as a "crime of violence" for purposes of enhancing his sentence. 789 F.3d at 1253. At resentencing, the district court imposed the same sentence, despite the fact that the recalculated guideline range was significantly lower. *Id.* On appeal, the Eleventh Circuit found that the imposition of the exact same sentence was substantively reasonable:

> The variance of 60 months above the advisory guidelines range was a major one. But the Supreme Court has forbidden us from presuming that a sentence outside the guidelines range is unreasonable. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. So, too, has it forbidden us from requiring "extraordinary circumstances to justify" such a sentence. *Id.* at 47, 128 S.Ct. at 595 (quotation marks omitted).

*Id.* at 1256.

In affirming the sentence, the Court of Appeals gave a lengthy explanation as to why it found the imposition of the same sentence on remand to be substantively reasonable, noting that (as in the present case) nothing about the facts of the defendant's crimes nor his extensive criminal history had changed between the first and second sentencing. *Id.* at 1260. The district court was required to consider the revised guideline range, but it was only one of many factors that the court had to consider in deciding an appropriate sentence. *Id.* Indeed, the *Rosales-Bruno* majority criticized the dissent for its position that the "advisory guidelines range becomes less

- 27 -

advisory and more mandatory if it was not correctly calculated at the initial sentence hearing." *Id.* at 1258. The Court explained, "We remand in cases like this one to correct errors in the steps leading to the district court's sentencing decision, not to punish the court or the government, or reward the defendant, because an error was committed the first time." *Id.* The district court's imposition of the same sentence on remand in *Rosales-Bruno* was upheld for the same reasons that Dahl's sentence should be upheld.

Dahl is therefore incorrect in suggesting that the district court could not consider the original sentence which the court earlier believed was the right one for his offense. The due process challenge is without merit.

## II. THE DISTRICT COURT MEANINGFULLY CONSIDERED THE 121 TO 151 MONTH GUIDELINE RANGE AND FOUND IT TO BE INADEQUATE FOR THIS OFFENDER

### Standard of Review

Dahl's claim of procedural error at sentencing is reviewed for plain error, as he failed to present this objection at the sentencing proceeding.[5] *United States v. Flores-Mejia*, 759 F.3d 253, 255 (3d Cir. 2014) (en banc). It is the defendant's burden to establish plain error. *United States v. Olano*, 507 U.S. 725, 734-35 (1993). To do so, he must prove that (1) the court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights, that is, the error affected the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If all three elements are established, the Court may, but need not, exercise its discretion to award relief. *Id.* That discretion should be exercised only in cases where the defendant is "actually innocent" or the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736, quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936). The "plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those

---

[5] Dahl incorrectly identifies the standard of review as de novo, claiming that he objected to the procedure at the district court level. The record is clear, however, that no such objection was made. App. 136.

circumstances in which a miscarriage of justice would otherwise result.'"
*United States v. Young*, 470 U.S. 1, 15 (1985), quoting *United States v.
Frady*, 456 U.S. 152, 163 n.14 (1982).


## Discussion

Dahl claims that the district court committed procedural error by
failing to give "meaningful consideration" to the 3553(a) sentencing factors.
The record clearly demonstrates otherwise, and his arguments should be
dismissed.

In *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), this Court
set forth a three-step framework for sentencing. First, a district court must
calculate a defendant's guidelines sentence as it would have before *United
States v. Booker*, 543 U.S. 220 (2005). *Gunter*, 462 F.3d at 247. Second, a
district court must "formally rule on the motions of both parties and state
on the record whether they are granting a departure and how that
departure affects the Guidelines calculation, and take into account our
Circuit's pre-*Booker* case law, which continues to have advisory force." *Id.*
Third, a district court "[is] required to exercise [its] discretion by
considering the relevant § 3553(a) factors . . . in setting the sentence [it

imposes] regardless whether it varies from the sentence calculated under the guidelines." *Id.*

To satisfy step three, the district court must "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012). Failure to give "meaningful consideration" to any such argument renders a sentence procedurally unreasonable. *Id.*

The claimed error of failure to give "meaningful consideration" must be brought to the district court's attention through an objection, and if the defendant fails to preserve the claimed error for appeal by objecting, this Court's authority to remedy the error is "strictly circumscribed." *Puckett v. United States*, 556 U.S. 129, 134 (2009). Requiring an objection to be made at the sentencing proceeding ensures that the court has the opportunity to rectify any error by giving meaningful review to the argument. *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc); *see also Puckett*, 556 U.S. at 134 (when a defendant contemporaneously objects, the district court "can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome."); *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010) ("[T]he sentencing judge, not the court of appeals,

is in a superior position to find facts and judge their import under § 3553(a) in the individual case.").

In this case, Dahl failed to lodge any objection at the sentencing hearing, despite the fact that he was given an opportunity to do so after the court's explanation of reasons for the 293-month sentence. App. 136. Instead, Dahl chose to remain silent about his objection to the court's explanation of the sentence, and now attempts to raise the issue for the first time on appeal. In failing to timely lodge his objection, Dahl is now subject to plain error review on appeal. Under this stringent standard (and indeed, even under the plenary standard of review that Dahl proposes), his argument should be dismissed.

### A.    The Court Did Not Commit Procedural Error in Not Repeating the Guideline Range When It Explained Its Sentence.

To begin, Dahl claims that the district court did not mention the guideline range at any point in its explanation of the sentence imposed, nor did the court give any indication of remaining cognizant of the range throughout sentencing. Br. 23. Dahl cannot credibly assert, however, that the recalculation of the guideline range was not foremost in the minds of everyone at sentencing; after all, this Court had just vacated and remanded the case for resentencing on that very issue. The presentence report

articulated the recalculated range of 121 to 151 months' incarceration. That range was not in dispute. Both sentencing memoranda discussed the calculation of the 121 to 151 month range, and at the sentencing hearing, both counsel referred to that range in their arguments to the court. App. 109, 126, 127, 129, 138, 143, 155, 158, 160, 162. The district court confirmed with Dahl that he had read the presentence report and that he had no objections to anything contained in the report. App. 131. Lastly, the court discussed the calculation of the guideline range on the record, setting out each step in the calculation and concluding, "[u]nder the Advisory Sentencing Guidelines, [Dahl] could be sentenced between 121 and 151 months in prison." App. 133.

The district court is required to consider the advisory guidelines range in making the sentencing decision, but, as explained earlier, there are numerous other factors under Section 3553 that the court must take into account. *See Booker*, 543 U.S. 220, 245 (2005). The guidelines are a consideration, but by no means are they the only consideration. The Supreme Court explained in *Gall v. United States,* 552 U.S. 38 (2007), that "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the

§ 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50.

That is just what the district court did in resentencing Dahl. The court correctly recalculated the advisory guidelines range, it gave both parties the opportunity to present evidence and testimony and to argue for the sentence they thought was appropriate, and it then considered the remaining 3553(a) sentencing factors in deciding an appropriate sentence. In the individual circumstances of this particular case, the court exercised its discretion to assign heavier weight to sentencing factors other than the advisory guidelines range. Nothing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other 3553(a) factor. *See Gall*, 552 U.S. at 57. There was no therefore no procedural error in failing to mention again the undisputed guideline range.

## B.    The District Court Did Not Commit Plain Error in its Sentencing Explanation.

Likewise, Dahl is incorrect in asserting, next, that the district court committed procedural error by failing to justify the variance from the recalculated advisory guideline range and by failing to respond to his mitigation arguments.

In *Booker*, the Supreme Court directed the Courts of Appeals to review a district court's imposition of a criminal sentence for

reasonableness. 543 U.S. at 261 (2005). Following *Booker,* this Court

established the framework for such a review, stating "we must first be

satisfied the court exercised its discretion by considering the relevant

factors." *United States v. Cooper,* 437 F.3d 324, 329 (3d Cir. 2006). The

sentencing court is not required to discuss and make findings as to each of

the 3553(a) factors "if the record makes clear the court took the factors into

account in sentencing." *Id.*; *see also United States v. Rita*, 551 U.S. 338,

358 (2007) (noting that "context and the record make clear that this, or

similar, reasoning, underlies the judge's conclusion"). As this Court stated

in *Cooper*, "[t]here are no magic words that a district judge must invoke

when sentencing," as long as the record shows "that the court considered

the § 3553(a) factors and any sentencing grounds properly raised by the

parties which have recognized legal merit and factual support in the

record." 437 F.3d at 332; *see also United States v. Charles*, 467 F.3d 828,

831 (3d Cir. 2006). Courts need only "'state adequate reasons for a sentence

on the record so that [we] can engage in meaningful appellate review.'"

*Charles*, 467 F.3d at 831, quoting *United States v. King*, 454 F.3d 187, 196-

97 (3d Cir. 2006)); s*ee also United States v. Lofink*, 564 F.3d 232, 238 n.13

(3d Cir. 2009) ("Although district courts must consider all of the § 3553(a)

factors, they need not explicitly comment on every factor if the record makes clear the court took the factors into account in sentencing.").

Ultimately, "[t]he touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc); *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010); see also *Cooper*, 437 F.3d at 330 ("[W]hat we must decide is whether the district judge imposed the sentence he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a).").

The record must make clear that the district court "has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority," *Rita*, 551 U.S. at 356, but the district court "need not analyze explicitly every argument that a defendant puts forward," *United States v. Quiles*, 618 F.3d 383, 397 (3d Cir. 2010). There is no requirement that the district court "make explicit findings as to each sentencing factor if the record makes clear that the court took all the factors into account." *Begin*, 696 F.3d at 411.

Viewed in this proper framework, the district court's sentence in this case was procedurally reasonable. First, the court clearly considered and

rejected Dahl's argument that a sentence within the 121 to 151 month guideline range was warranted. *See Rosales-Bruno*, 789 F.3d at 1258 ("As the *Booker* decision establishes, the guidelines and their application provide advice about sentencing; they do not control it (citations omitted). That is why a change in the guidelines may lead to a change in the sentence but does not require one.").

Second, Dahl's argument for mitigation based on his health was also considered and rejected. Dahl submitted his medical records to the court well before the hearing, and the court acknowledged having received them. App. 122. Both in his sentencing memorandum and at the hearing, Dahl argued for mitigation based on his "recently deteriorated" and "failing" health. App. 122-23, 127, 164-65, 170-218. However, the only medical condition that Dahl cited in support of his argument for mitigation was osteoarthritis in Dahl's hip, which may require a hip replacement. Dahl presented nothing before or during the hearing that in any way demonstrated that his hip condition would prevent him from his lifelong pursuit of the sexual abuse of young boys.[6] The district court's primary concern was protection of the public, and the fact that the court did not

---

[6] This is particularly true in light of the fact that a successful hip replacement would substantially improve Dahl's mobility.

explicitly state its reasons for rejecting this particular argument does not render the sentence procedurally flawed. The court listened to the arguments. The court accepted the unrefuted medical records. Dahl was provided with due process. That the district court opted not to vary downward on this basis does not render the sentence procedurally unreasonable, especially here, considering the heinous circumstances of this previously convicted sex offender's attempts to sexually abuse two minor boys yet again.

Third, the court also heard argument that Dahl was at lower risk of reoffending because he was 54 years of age. Dahl's counsel argued, "As Your Honor is well aware, recidivism rates do drop off with age. Some stats have it at 40, some stats have it definitely as people get older." App. 127. Dahl provided no testimony or any other evidence to support this claim.[7] Even if the court were to accept that the unspecified statistics showed that older defendants were less likely to commit offenses, the evidence in the present case proved that this particular defendant does not fit within those statistics. He was already 54 years of age when he committed these two federal offenses, which represented his ninth conviction. The court

_____

[7] The defense did not address the issue of whether the general statistics applicable to recidivism rates across all crimes applied equally to sex crimes such as those committed by the defendant in this case.

specifically rejected that he was at low risk to reoffend, finding that there was "no doubt that without a long sentence and a significant upward variance, [the defendant] would be back on the street as a sexual predator." App. 135.

In addition to the fact that Dahl had committed these offenses over his lifetime and into middle age, it was significant to the court in terms of his risk of recidivism that Dahl was also classified as a pedophile: "In a word, Mr. Dahl, you are a pedophile and a recidivist." App. 135. The presentence report defined pedophilia as "a mental disorder in which sexual arousal and activity involves prepubescent children usually 13 years or younger," and advised that those who meet this classification have "strong urges to gratify their pedophilic urges," PSR ¶ 84-86, as Dahl has so clearly demonstrated by his relentless pursuit of young boys over the last 30 years. The district court justifiably relied upon this information in rejecting Dahl's argument that he was at low risk to reoffend.

Lastly, Dahl argues that his sentence is procedurally unreasonable because the court allegedly failed to consider his argument regarding sentencing disparity. Br. 30. Section 3553(a)(6) directs the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

conduct." By its plain terms, Section 3553(a)(6) applies only where defendants are similarly situated. *See United States v. Parker*, 462 F.3d 273 (3d Cir. 2006) (affirming downward variance based on defendant's cooperation, finding that his cooperation distinguished him from his co-defendants: "While similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record.").

The only evidence that Dahl submitted to the district court in support of his disparity argument was a two-page table that reported sentences for every criminal case in the Third Circuit in 2015. App. 168-69. There was no information in the table regarding sentences for sex offenses involving children, nor was any additional information provided at the hearing. *See United States v. Vargas*, 477 F.3d 94, 100 (3d Cir. 2007) ("This Court . . . place[s] the burden on the defendant to demonstrate similarity by showing that other defendants' circumstances exactly paralleled his.*"), abrogated on other grounds by United States v. Arrelucea–Zamudio*, 581 F.3d 142, 149 (3d Cir. 2009).

Nor is it likely that such information regarding "similarly situated" sex offenders such as Dahl exists. As a repeat child sex offender with nine prior convictions spanning 30 years, five of which involved the sexual abuse

- 40 -

and assault of minors, and almost all of which were committed while under court supervision, Dahl truly is outside the heartland of most offenders. The disparity was only magnified when the court considered all of the interventions that were attempted over the 30 years Dahl spent in the criminal justice system, which included multiple "successful" completions of sex offender programs, counseling, probation, county jail, and prison, all of which failed as Dahl continued to commit sexual crimes against children. Indeed, at both sentencing hearings, the district court reviewed all of the sentences and interventions imposed upon Dahl over the years, noting that they had not "taught him anything at all." App. 103-04, 134-35. Dahl's argument here fails first because he failed to provide evidence regarding the sentences in cases that were truly similar to his. More significantly, Dahl's disparity argument fails because the court considered and rejected it in the face of Dahl's particular circumstances.

The court's recitation of its reasons for imposing a 293-month sentence is a far cry from a "rote statement that the court has considered each of the § 3553(a) factors." Rather, it makes clear that the district court considered the parties' arguments and had a "reasoned basis for exercising his own legal decisionmaking authority." *Begin*, 696 F.3d at 411; *United States v. Schlager*, 573 F. App'x 106, 108 (3d Cir. 2014) (not precedential);

*see also United States v. Dragon*, 471 F.3d 501 (3d Cir. 2006) (top-end of the guidelines sentence held to be reasonable; court's explanation of sentence, despite failing to explicitly address every sentencing factor, found not to be error). A "district court's failure to give mitigating factors the weight a defendant contends they deserve does not render a sentence per se unreasonable." *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007); *United States v. Tomko*, 562 F.3d at 568 (3d Cir. 2009) (en banc) (concluding that there is no procedural error when the sentencing court does not discuss a specific argument if "[t]he record makes clear that the sentencing judge listened to each argument" and rejected certain of them.) In Dahl's case, the court simply disagreed with the defense's arguments for mitigation, and plainly stated its reasons for doing so.

For these reasons, and others carefully cited on the record, the district court found that a significant upward variance from the Guidelines range was required to accomplish the goals outlined in Section 3553(a). The court committed no error, much less plain error in its sentencing procedure. On the contrary, the district court considered all of the defense arguments and requests for a within-guideline sentence, and rejected them.

Finally, even if there were an error, there should not be relief on plain error review. The district court has twice conducted extensive proceedings,

and decided each time that a 293-month term is warranted. There is no reasonable possibility that the result would have been any different had the court said more.

Dahl, in seeking leniency from this Court, has failed to demonstrate any error in the procedure employed by the district court, and his appeal must be denied.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the judgment of sentence be affirmed.

LOUIS D. LAPPEN
Acting United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126


*/s Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney
Pa. Bar No. 67265

United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8471

## CERTIFICATION

1. The undersigned certifies that this brief contains 8,953 words, exclusive of the table of contents, table of authorities, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

*/s Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Brett Sweitzer, Esq.
Federal Community Defender Office
   for the Eastern District of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA  19106

*/s Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

DATED:  June 19, 2017.